UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CHARMAINE MARIE HART SILAS          CIVIL ACTION NO. 6:18-cv-00121

VERSUS                              JUDGE JAMES

U.S. COMMISSIONER,                  MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of a closed period of disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

## Administrative Proceedings

The claimant, Charmaine Marie Hart-Silas, fully exhausted her administrative remedies before filing this action in federal court.  She filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), alleging disability beginning on April 9, 2014.[1]  Both applications were denied.[2]  The claimant requested a hearing, which was held on April 27, 2016 before

---

[1]     Rec. Doc. 14-1 at 180, 187.

[2]     Rec. Doc. 14-1 at 85, 86.

Administrative Law Judge Angela Donaldson.[3]  The ALJ issued a decision on June 2, 2016, concluding that the claimant was not disabled within the meaning of the Social Security Act.[4]

The claimant then requested that the Appeals Council review the ALJ's decision.  The Appeals Council considered additional evidence provided by the claimant, obtained a memorandum from a medical consultant to the Appeals Council, and decided that the claimant was entitled to receive both disability insurance benefits and supplemental security income payments for a closed period of disability beginning on April 9, 2014 and ending on April 29, 2015.[5]  The Appeals Council's decision is the final decision of the Commissioner for the purpose of the court's review.[6]  The claimant then initiated this action, seeking review of the Commissioner's decision.

---

[3]    A transcript of the hearing is found in the record at Rec. Doc. 14-1 at 56-82.

[4]    Rec. Doc. 14-1 at 39-51.

[5]    Rec. Doc. 14-1 at 11-16.

[6]    20 C.F.R. § 404.984.

## **Summary of Pertinent Facts**

The claimant was born on November 22, 1977.[7]  At the time of the ALJ's decision, she was thirty-eight years old.  She completed two years of college,[8] and has relevant work experience as a cashier and stocker in retail stores and, more recently, as a licensed professional nurse.[9]  She alleged that she has been disabled since April 9, 2014[10] due to the injuries she sustained in an automobile accident.  She allegedly injured her cervical spine and lumbar spine in the accident,[11] and she did not return to work thereafter.[12]  She also alleged impairments due to lupus, diabetes, high blood pressure, blood clots, depression, nerve damage, sciatica, and high cholesterol.[13]  In October 2014, she underwent a two-level discectomy and spinal fusion performed by Dr. Louis Blanda.[14]

On April 27, 2016, the claimant testified at a hearing regarding her symptoms and her medical treatment.  The claimant testified that, before the surgery, she was

---

[7]      Rec. Doc. 14-1 at 87, 180, 187.

[8]      Rec. Doc. 14-1 at 59.

[9]      Rec. Doc. 14-1 at 60, 64-66, 71-74, 196-201, 221.

[10]     Rec. Doc. 14-1 at 187.

[11]     Rec. Doc. 14-1 at 60, 70-71.

[12]     Rec. Doc. 14-1 at 62.

[13]     Rec. Doc. 14-1 at 87.

[14]     Rec. Doc. 14-1 at 70, 551-554, 563-566.

3

able to lift, bend, and extend but, since the surgery, she is very limited in what she is able to do. She stated that she was continuing to see Dr. Blanda every three months for back pain, and she reported having more bad days than good days. She testified that she was diagnosed with a herniated cervical disc that causes tingling pain running down her arm and causes weakness. She stated that Dr. Blanda also thinks that she has a torn rotator cuff that is causing her symptoms and has discussed possible surgery but wants to finish treating her back before proceeding with surgical intervention on the shoulder.

In addition to her back, neck, and shoulder impairments, the claimant testified that she was diagnosed with diabetes for which she was initially prescribed Meformin. The medication was discontinued, however, and now her blood glucose levels are simply being monitored. The claimant sees a cardiologist, Dr. Bose Cheeran, for hypertension, high cholesterol, and blood clots. She takes medication for those conditions but still experiences symptoms including headaches and blurred vision. In 2014, a filter was implanted because of blood clots in her leg and lungs, and she subsequently had no recurrence. She attributes her occasional shortness of breath to lung damage from the blood clots. She also testified that she takes Xanax for anxiety caused by her inability to work and Ambien to help her sleep.

The claimant testified that she is unable to sit for very long and must reposition herself approximately every thirty to forty-five minutes. She stated that she can walk

for only about ten minutes at a time. She shops for groceries but cannot lift a twelve-pack of water. She stated that she has difficulty getting in and out of the bathtub without assistance. She also described her difficulty with bending over, particularly with regard to buckling her shoes and applying lotion to her lower legs.

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[15] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[17]

---

[15]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[16]    *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[17]    *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[18]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[19]  Conflicts in the evidence[20] and credibility assessments[21] are for the Commissioner to resolve, not the courts.  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[22]

## B.    **Entitlement to Benefits**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, if they are both insured and disabled, regardless of indigence,[23] while the Supplemental Security

---

[18]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[19]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

[20]    *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[21]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[22]    *Wren v. Sullivan*, 925 F.2d at 126.

[23]    See 42 U.S.C. § 423(a).

Income ("SSI") program provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled.[24]

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[25]  A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[26]

## C.    Evaluation Process and Burden of Proof

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix

---

[24]    42 U.S.C. § 1382(a)(1) & (2).

[25]    42 U.S.C. § 1382c(a)(3)(A).

[26]    42 U.S.C. § 1382c(a)(3)(B).

1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[27]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[28] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[29]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[30]

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[31]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[32]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[27]     20 C.F.R. § 404.1520.

[28]     20 C.F.R. § 404.1520(a)(4).

[29]     20 C.F.R. § 404.1545(a)(1).

[30]     20 C.F.R. § 404.1520(e).

[31]     *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[32]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

rebut this finding.[33]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[34]

In a closed period disability case, such as this one, the Commissioner must follow an eight-step sequential evaluation process to determine whether the person's disability has ceased:

(1) Is the claimant engaged in substantial gainful activity?  If so, the disability has ended.

(2) If not, does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment?  If so, the disability is continuing.

(3) Has there been medical improvement?

(4) If so, is it related to the claimant's ability to do work?

(5) If there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable?  If not, the disability is continuing.

---

[33]    *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[34]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

(6) If there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe?  If not, the disability has ended.

(7) If so, is the claimant able to engage in past relevant work? If so, the disability has ended.

(8) If not, is the claimant able to perform other substantial gainful activity?[35]

## D.    **The Commissioner's Findings and Conclusions**

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since March 15, 2014.[36]  This finding was adopted by the Appeals Council,[37] and it is supported by substantial evidence in the record.  The claimant did not challenge this finding.

At step two, the ALJ found that the claimant has the following severe impairments:  degenerative disc disease of the cervical and lumbar spine, sciatica, left rotator cuff tear and dysfunction, and chronic venous insufficiency.[38]   This

---

[35]    20 C.F.R. § 416.994(f) & 20 C.F.R. § 404.1594(f).

[36]    Rec. Doc. 14-1 at 41.

[37]    Rec. Doc. 14-1 at 14.

[38]    Rec. Doc. 14-1 at 41.

finding was adopted by the Appeals Council.[39]   This finding is supported by substantial evidence in the record, and it was not challenged by the claimant.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[40]  The Appeals Council found, however, that the claimant met Listing 1.04A because she had nerve root compression with weakness and loss of reflexes, but only during the time period between April 9, 2014 and April 29, 2015.[41]  The Appeals Council's finding in this regard was based on its finding that the claimant's medical condition improved following surgery.[42]  The claimant challenged this finding, arguing that the claimant did not experience "significant"[43] or "meaningful"[44] post-surgical improvement and remains disabled.

The ALJ found that the claimant has the residual functional capacity to perform light work except for the following:  she requires the option to sit down every forty-five minutes for fifteen minutes before standing up again, she can only

---

[39]     Rec. Doc. 14-1 at 14.

[40]     Rec. Doc. 14-1 at 43.

[41]     Rec. Doc. 14-1 at 15.

[42]     Rec. Doc. 14-1 at 15.

[43]     Rec. Doc. 19 at 9.

[44]     Rec. Doc. 19 at 10.

occasionally climb ramps/stairs, balance, stoop, kneel, crouch, crawl, reach overhead bilaterally, and reach in other directions on her nondominant side; she can never climb ladders, ropes, or scaffolds; she can have no exposure to pulmonary irritants; she can understand, remember, and carry out only simple work-related tasks and make simple work-related decisions; and she is able to perform only low-stress work consistent with unskilled work.[45]  The Appeals Council made the same finding but only for the time periods before April 9, 2014 and after April 29, 2015.[46] The claimant challenged this finding.

At step four, the ALJ found that the claimant is not capable of performing any of her past relevant work.[47]  The Appeals Council adopted this finding.[48]  The claimant did not challenge this finding.

At step five, the ALJ found that the claimant was not disabled from the alleged disability onset date through the date of the decision because there are jobs in the national economy that she can perform.[49]  The Appeals Council adopted this finding,

---

[45]     Rec. Doc. 14-1 at 44.

[46]     Rec. Doc. 14-1 at 14.

[47]     Rec. Doc. 14-1 at 49.

[48]     Rec. Doc. 14-1 at 14.

[49]     Rec. Doc. 14-1 at 51.

but only with regard to the time periods before April 9, 2014 and after April 30, 2015.[50]  The claimant challenged this finding.

In summary, the Appeals Council found that the claimant met Listing 1.04A starting on April 9, 2014 (the date of her automobile accident) but no longer met that listing starting on April 30, 2015 due to medical improvement; consequently, the Appeals Council found that the claimant was disabled from April 9, 2014 to April 29, 2015 but was not disabled thereafter.[51]

**E.    The Allegations of Error**

The claimant failed to comply with the briefing procedures set forth in the scheduling order[52] by not specifically identifying the errors allegedly committed at the administrative level that entitle the plaintiff to relief.  This Court interprets the claimant's brief as alleging that the Appeals Council erred in finding postsurgical medical improvement sufficient to end the period of disability on April 29, 2015, as found by the Appeals Council.

**F.    Did the ALJ Err in Finding Medical Improvement?**

The Appeals Council found that the claimant was entitled to benefits for a "closed period" of time.  A "closed period of disability" occurs when an applicant

---

[50]    Rec. Doc. 14-1 at 15.

[51]    Rec. Doc. 14-1 at 15.

[52]    Rec. Doc. 13 at 2.

13

for disability benefits was disabled for a finite period of time that started and stopped prior to the date of the Commissioner's decision.[53]  When disability benefits are granted for a closed period of time, two decisions occur:  first, the claimant is found to be disabled and benefits are granted; second, a decision is made that the disability ended.[54]

To determine when the disability (and therefore the closed period) ended, the medical improvement standard must be applied.[55]  Disability benefits may appropriately be discontinued when there is substantial evidence that "(1) there had been a medical improvement related to the ability to work, and (2) the individual is now able to engage in substantial gainful activity."[56]  A "medical improvement" is any decrease in the medical severity of an impairment that was present at the time of the most recent favorable disability determination.[57]  Thus, a "medical improvement" need not be significant or meaningful, as alleged by the claimant. Medical improvement is related to a claimant's ability to work if there was a decrease in the severity of the impairment and an increase in the claimant's functional capacity

---

[53]    *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002).

[54]    See *Joseph v. Astrue*, 231 F. App'x 327, 329 (5th Cir. 2007).

[55]    *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002).

[56]    *Teague v. Astrue*, 342 Fed. App'x 962, 963-64 (5th Cir. 2009).

[57]    See 20 C.F.R. § 416.994(b)(1)(i).

to do basic work activities.[58]  If the Commissioner finds that the claimant formerly met a listing, that there was medical improvement, and that the listing is no longer met, it is presumed that the medical improvement is related to the claimant's ability to work.[59]  A finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, or laboratory findings associated with the impairment.[60]  The Commissioner has the burden of proving the claimant is no longer disabled as of the cessation date.[61]

In this case, the Appeals Council based its decision that the claimant's medical condition had improved on a memorandum dated June 22, 2017 from Richard S. Polin, M.D., a medical consultant to the Appeals Council.[62]  The claimant contends, however, that Dr. Blanda's treatment notes and an independent examination by Dr. Thomas V. Bertuccini on September 23, 2015, established that there was no medical

---

[58]    *Teague v. Astrue*, 342 Fed. App'x at 964.

[59]    20 C.F.R. § 416.994(b)(2)(iv)(A) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.").

[60]    See 20 C.F.R. § 416.994(b)(1)(i).

[61]    *Teague v. Astrue*, 342 Fed. Appx. at 964; *Waters v. Barnhart*, 276 F.3d at 718.

[62]    In March 2019, the Commissioner filed a motion to supplement the record with a copy of Dr. Polin's report.  (Rec. Doc. 24).  The motion was granted (Rec. Doc. 26), and Dr. Polin's report was added to the record (Rec. Doc. 27).  But Dr. Polin's report had already been included in the record.  (Rec. Doc. 14-1 at 176-177).  Therefore, the claimant was not prejudiced by the supplementation of the record.

improvement.  The claimant therefore contends that the Commissioner did not meet her burden of showing that medical improvement occurred.

The record indicates that the claimant first saw Dr. Louis Blanda on July 15, 2014.[63]  He reviewed an MRI of the claimant's lumbar spine that was obtained a month earlier and showed what Dr. Blanda described as "significant" herniated disks of the lumbar spine.  His physical examination of the claimant on that date found tenderness in the claimant's low back, muscle spasm, a decreased range of motion, decreased deep tendon reflexes, decreased sensation on the right in the L5 and S1 dermatome, mild to moderate weakness of the right foot, and a positive straight leg raise test on the right.  Dr. Blanda recommended EMG testing of both legs and noted that the claimant might need surgery.  Dr. Daniel L. Hodges conducted the EMG testing on August 12, 2014.[64]  When the claimant returned to Dr. Blanda on August 19, 2014, she again had positive straight leg raise tests, and Dr. Blanda recommended surgery.[65]

Dr. Blanda performed surgery on the claimant's lumbar spine on October 29, 2014.  The admitting diagnosis was herniated discs at L4-5 and L5-S1 with bilateral radiculopathy, and the procedures performed were lumbar laminectomy and

---

[63]    Rec. Doc. 14-1 at 651-654.

[64]    Rec. Doc. 14-1 at 648-650.

[65]    Rec. Doc. 14-1 at 646.

decompression with foraminotomies at L5-S1 bilaterally, exploration of the L5-S1 disc bilaterally, laminectomy and exploration of the L4-5 disc on the right with decompression and foraminotomy on the right, posterior lateral fusion at L4-5 and L5-S1 bilaterally, bone grafting, and the insertion of pedicle screws.[66]

The claimant continued to treat with Dr. Blanda after the surgery. On December 30, 2014, Dr. Blanda noted that the claimant's back was stiff, she had mild pain with straight leg raising tests, and her strength was slightly decreased on the right. Dr. Blanda prescribed a physical therapy regimen.[67] When the claimant returned to Dr. Blanda on March 31, 2015,[68] she reported that physical therapy had increased her leg pain and Dr. Blanda described her as "intolerant" to physical therapy. Straight leg raise tests were negative. On June 30, 2015, the claimant returned to Dr. Blanda and reported overall improvement with less pain and an increased activity level.[69] Straight leg raise tests were again negative. When the claimant returned to see Dr. Blanda on September 15, 2015,[70] however, straight leg raise tests were weakly positive, and Dr. Blanda ordered an MRI of the lumbar spine.

---

[66]    Rec. Doc. 14-1 at 551.

[67]    Rec. Doc. 14-1 at 637.

[68]    Rec. Doc. 14-1 at 635-636.

[69]    Rec. Doc. 14-1 at 633-634.

[70]    Rec. Doc. 14-1 at 631-632.

On September 23, 2015, the claimant was examined by Dr. Thomas V. Bertuccini for an independent medical examination.[71]  Dr. Bertuccini evaluated the claimant's neck and shoulder pain as well as her low back and leg pain.  He found that there was no spinal cord or nerve root compromise in her cervical spine.  His examination of the claimant's lumbar spine found, however, that she had tenderness, a marked limitation in range of motion at the waist, a negative straight leg raise test on the left, and a positive straight leg raise test on the right.

The MRI, obtained by Dr. Blanda on September 24, 2015,[72] was suspicious for recurrent disc herniations at both L4-5 and L5-S1 and moderate canal stenosis at L5-S1 with less canal stenosis at L4-5.  When the claimant saw Dr. Blanda again on October 8, 2015,[73] physical examination again revealed a weakly positive straight leg raise test on the right.   Dr. Blanda recommended lumbar epidural steroid injections ("LESI").  When the claimant followed up on January 5, 2016,[74] she reported mild leg pain and straight leg raise tests were negative bilaterally.  She had not yet had the LESI.  Straight leg raise tests were again negative on March 3, 2016.[75]

---

[71]    Rec. Doc. 14-1 at 657-671.

[72]    Rec. Doc. 14-1 at 604-607.

[73]    Rec. Doc. 14-1 at 629-630.

[74]    Rec. Doc. 14-1 at 627-628.

[75]    Rec. Doc. 14-1 at 625-626.

The claimant had an LESI at L4 on January 26, 2015, which she reported gave about 50% relief for only two to three days. She continued to complain of persistent radicular pain through her right leg. The claimant saw Dr. Blanda regularly thereafter but there were no further reports of positive straight leg raise tests.[76]

Listing 1.04A is defined as a disorder of the spine resulting in compromise of a nerve root with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Thus, positive straight leg raise tests are an important part of the criteria for this listing.

Dr. Polin noted that, "[p]rior to surgery, there was clear-cut indication of severe pathology with severe nerve root compression and weakness as well as sensory loss"[77] that satisfied the criteria of Listing 1.04A. This is consistent with Dr. Blanda's preoperative findings, including positive straight leg raise tests on the right in July and August 2014. Dr. Polin went on to say that Listing 1.04A "was met prior to surgery and at least a 6 month recovery from a multiple level back fusion surgery is reasonable. Consequently, listing 1.04A was met from 4/9/14 until

---

[76]     Rec. Doc. 14-1 at 267-269, 688-690, 684-686, 263-265, 241-242, and 681-683.

[77]     Rec. Doc. 14-1 at 176.

4/29/15."[78]   The Appeals Council found that Dr. Polin's opinion was "consistent with the medical record and correlates with the clinical data."[79]   The Appeals Council also found that Dr. Polin's opinion was "persuasive."[80]

As noted above, however, a finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, or laboratory findings associated with the impairment.  Dr. Polin's conclusion that the claimant's disability ended on April 30, 2015 was not based on any symptoms, signs, or laboratory findings; instead, it was based on his unsupported opinion that it is reasonable for a patient to recover from multi-level fusion surgery in six months.  In fact, both Dr. Blanda and Dr. Bertuccini found that the claimant still had positive straight leg raise tests in September 2015 and Dr. Blanda noted a positive straight leg raise test again in October 2015.  Dr. Polin's conclusion is not consistent with those findings.  More important, the Appeals Council's finding that the claimant's disability ended on April 29, 2015 is not supported by any symptoms, signs, or laboratory findings correlated to that date.

---

[78]    Rec. Doc. 14-1 at 177.

[79]    Rec. Doc. 14-1 at 12.

[80]    Rec. Doc. 14-1 at 12.

Furthermore, Dr. Polin opined that that the claimant would be capable of sedentary work with certain restrictions following recovery from surgery.[81]  The Appeals Council apparently did not find that opinion "persuasive" since it adopted the ALJ's residual functional capacity finding that the claimant was capable of performing light work with certain restrictions following surgery.  The Appeals Council did not explain how Dr. Polin's residual functional capacity analysis figured into its residual functional capacity finding.

The Appeals Council erred at the fourth step of the eight-step sequential analysis.  While the Appeals Council correctly found that the claimant met a listing due to the injuries sustained in the automobile accident of April 2014, the Appeals Council's finding that the claimant had medical improvement establishing that she no longer met the criteria of the listing on April 30, 2015 was not supported by substantial evidence in the record.  The burden of proof was on the Appeals Council to establish that the claimant's disability terminated and the date on which it terminated, but the Appeals Council failed to meet that burden.  The Appeals Council also erred in failing to explain the basis for its residual functional capacity evaluation.

---

[81]    Rec. Doc. 14-1 at 177.

Reversal of the Commissioner's decision is warranted only if the claimant shows that she was prejudiced by the Commissioner's error.  Here, prejudice is established because a more thorough analysis of the evidence in the record might have led the Appeals Council to a different decision with regard to medical improvement, the date of medical improvement, and residual functional capacity.

## Conclusion and Recommendation

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to reconsider whether the claimant experienced medical improvement and to explain the evidence that supports medical improvement, if any, on any particular date, and to reevaluate the claimant's residual functional capacity. Because the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[82]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of

---

[82]    See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[83]

Signed in Lafayette, Louisiana, this 5th day of April 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[83]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).